CRIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 1 5 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THOMAS, Clerk
Deputy Clerk

| | |
|---|---|
| In re NASD Arbitration 04-01425 Between: | CIVIL ACTION NO. |
| **FESTUS & HELEN STACY FOUNDATION, INC.,** <br> **Movant-Claimant** | _____ |
| v. <br> **MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, et al.,**   **Respondents** | WITH REQUEST FOR ARGUMENT |
| **TH LEE PUTNAM VENTURES, L.P. and CLICK TACTICS, INC.,**   **Subpoena Recipients** | **1 06-M1 ·0068** |

GET

## MEMORANDUM IN SUPPORT OF
## MOTION TO ENFORCE SUBPOENAS
## UNDER NASD ARBITRATION CODE GEORGIA ARBITRATION CODE, AND
## FEDERAL ARBITRATION ACT, AND MOTION TO COMPEL

### TABLE OF CONTENTS
\*\*

SUMMARY OF THE CASE AND APPLICABLE PROCEDURE            2

### FACTS
1. The Underlying Claim and Need for the Subpoenaed Information      3
2. The Pending NASD Arbitration and the Subpoenas, and NASD Overruling of Objections to Them      4
3. Jurisdiction To Enforce the Subpoenas      6

### ARGUMENT
A. THE NASD ARBITRATION PANEL PROPERLY ISSUED THE SUBPOENAS, AND THEY ARE ENFORCEABLE, UNDER NASD, GEORGIA, AND FEDERAL AUTHORITY      7
1. NASD Arbitration Code      7
2. Georgia Arbitration Code Authority (or Alternatively Florida Arbitration Code)      8
3. Federal Arbitration Act Authority      10

4. Federal Court Authority To Enforce Arbitrators' Subpoenas                    12

**B. THE NASD ARBITRATION PANEL PROPERLY RULED ON AND OVERRULED OBJECTIONS, AND FEDERAL COURTS DEFER TO SUCH ARBITRATION DETERMINATIONS**                    14
1. The Arbitration Panel Had Authority To Rule on Objections to the Subpoenas    14
2. The Arbitration Panel Correctly Rejected the Argument that Arbitration Subpoenas May Not Be Enforced Before a Hearing or Trial, but Only To Require a Witness To Bring Documents to a Hearing or Trial                    16
3. The Proposed Confidentiality Agreement Adequately Protects the Subpoenaed Documents                    17
4. The Arbitration Panel Correctly Found that the "General Objections" Were Not Meritorious                    18
5. The Arbitration Panel Also Correctly Found that the "Specific Objections" Were Not Meritorious                    19
CONCLUSION                    22

-----------------------------------------

These subpoenas were properly issued, and should be enforced by this Court, under

three independent bases: (1) under NASD Arbitration Code Rule 10322(a) and NASD

subpoena rules (Exhibit 11); (2) under the Georgia Arbitration Code (O.C.G.A. §§ 9-9-

9(a), 9-11-26(b)(1), O.C.G.A. § 9-11-34(c)); and alternatively (3) under the Federal

Arbitration Act (9 U.S.C. § 7; *In re Arbitration Between Security Life Ins. Co.,* 228 F.3d

865, 870-72 (8th Cir. 2000); *American Federation of Television & Radio Artists v.

WJBK-TV,* 164 F.3d 1004, 1009 (6th Cir. 1999); *Amgen Inc. v. Kidney Center,* 879

F.Supp. 878, 880 (N.D. Ill. 1995); *Meadows Indemnity Co. v. Nutmeg Insurance Co.,*

157 F.R.D. 42, 44 (M.D. Tenn. 1994); *Stanton v. Paine Webber Jackson & Curtis,*

*Inc.,* 685 F. Supp. 1241, 1242-43 (S.D.Fla. 1988)).*

* All underlining is added; all italics are in original.

## SUMMARY OF THE CASE AND APPLICABLE PROCEDURE

This case involves a Motion To Enforce Subpoenas, which were issued in a NASD Arbitration and served with U.S. District Court subpoenas. The NASD Arbitration involves federal and state securities claims by the Stacy Foundation against Merrill Lynch. The two subpoenas, which we seek to enforce, are against TH Lee (in which ML-Lee by Merrill Lynch to invest, and in ML-Lee in turn the Stacy Foundation invested), and against Click Tactics, Inc. (in which TH Lee and ML-Lee invested approximately $7 million initially and at least $22.8 million ultimately).

The subpoenas (Ex. 1-6) were issued under (and expressly rely on) the three different sources of authority listed above: NASD Arbitration Code, Georgia Arbitration Code, and Federal Arbitration Act. Each source authorizes and encourages a court of relevant jurisdiction to enforce validly issued and served[1] subpoenas. For example, the Federal Arbitration Act expressly provides that the U.S. District Court, where the arbitrators sit, may compel or enforce:

> if any person or persons so summoned to testify to testify shall refuse or neglect to obey said summons, upon petition *the United States district court for the district in which such arbitrators, or a majority of them, are sitting* may compel the attendance of such person or persons before said arbitrator or arbitrators . . . .

_____

[1] The subpoenas were personally served on the registered agents of each recipient (TH Lee and Click Tactics). *See* Ex. 2-3, 5-6.

9 U.S.C. § 7. *Accord, In re Arbitration Between Security Life Ins. Co.,* 228 F.3d 865, 870-71 (8th Cir. 2000) (in Minn. arbitration, C.D.Cal. subpoena for Cal. records enforced in D.Minn.); *Amgen Inc. v. Kidney Center,* 879 F.Supp. 878, 880, 881, 883 (N.D.Ill. 1995) (in Ill. arbitration, E.D.Pa. subpoena for Pa. records enforced in N.D.Ill.).

The Georgia Arbitration Code provides that

(a)   The arbitrators may issue subpoenas for the attendance of witnesses and for the production of books, records, documents, and other evidence.   These subpoenas shall be served and, *upon application to the court* by a party or the arbitrators, *enforced* in the same manner provided by law for the service and enforcement of subpoenas in a civil action.

O.C.G.A. § 9-9-9(a).

## FACTS

### 1.  The Underlying Claim and Need for the Subpoenaed Information

The matter in controversy[2] is, in part, that the Stacy Foundation[3] (a charitable foundation) was wrongly solicited by Merrill Lynch, Pierce, Fenner & Smith Incorporated to invest at least $546,720 in ML-Lee Internet Trust (ML-Lee) (SOC ¶¶7-9), a fund established by Merrill Lynch expressly and solely to invest in TH Lee Putnam Ventures, L.P. (TH Lee). (¶18(c).)   TH Lee misstated the "Current Value[s]" of its roughly 27

---

[2] Pursuant to an Amended Statement of Claim ("SOC") filed with NASD, and attached as Ex. 8.

[3] The Stacy Foundation is a Section 501(c)(3) nonprofit organization that makes grants to foster care organizations, homeless shelters, and other charities. (SOC ¶1.)

portfolio companies (in which it invested), in quarterly federal securities filings (Ex. 9), and ML-Lee repeated those "Current Values" to the Stacy Foundation, in its quarterly reports. (¶¶18(b), 17(c), Ex.9.) Those preceded the Stacy Foundation's investment of most of its total investment (it paid $170,910 initially and thereafter invested $375,810 and then more). (¶¶9, 21.)

The Stacy Foundation needs the valuation information that the 27 portfolio companies provided to TH Lee, to support or disprove the valuations reported by TH Lee and ML-Lee to the Foundation and to other investors, because those valuations are grossly inflated. The Stacy Foundation made the subsequent investments expressly because TH Lee and ML-Lee reported that the total of valuations had dropped very little (SOC ¶18(b)-(c)), at a time when securities markets were dropping much more. (¶9.) Nearly all the companies were and are private, so no publicly filed information is available. (¶22(e), Ex.9.) TH Lee refuses to provide any support for its reported valuations, and ML-Lee claims it has no information at all. Nearly all the 27 companies refused to provide information.

## 2. The Pending NASD Arbitration and the Subpoenas, and NASD Overruling of Objections to Them

The Stacy Foundation filed a Statement of Claim with NASD (Ex.8) ("SOC") for arbitration, as it was required to do under its client agreement with Merrill Lynch.

The Panel of Arbitrators issued subpoenas to TH Lee, to ML-Lee, and to the 27 portfolio companies including Click Tactics, Inc. (a Georgia-based company). (Ex. 1, 4.) U.S. District Court subpoenas were issued in the District of Delaware, identifying the documents sought as those described in the attached NASD subpoenas. Both were served on the Delaware registered agents of TH Lee and Click Tactics, and of most of the others of the 27 portfolio companies. (Ex. 2, 5.) The Stacy Foundation offered a confidentiality agreement to protect the documents and information to be produced. (Ex.7.) Yet all the foregoing companies filed objections to the subpoenas, with 13 portfolio companies including Click Tactics using TH Lee's counsel, and did not produce a single document.

The Stacy Foundation moved for the Panel of Arbitrators to reject those objections (Mar. 15, 2005). The Panel did not decide the motion until last month, and overruled the various objections. (Ex.10.) The Panel's issuance of subpoenas was authorized by clear NASD rules. (Ex.11.) The arbitration is in Atlanta, where the Arbitrators sit. (Ex.12.)

The Stacy Foundation reissued the same subpoenas as had been issued in the District of Delaware, from the Southern District of New York for TH Lee and from this District for Click Tactics, Inc., identifying the documents sought as those described in the attached NASD subpoenas. Those were served on TH Lee (Ex.3) at its "headquarter[s] in New York" City (Ex.15) and on Click Tactics (Ex.6) at its "operations" headquarters in Duluth, Georgia (Ex.16). (TH Lee had invested $7 million initially, and at least $22.8 million

ultimately, in Click Tactics. Ex.17.)   The subpoenas required TH Lee to produce

documents in New York City, and Click Tactics to produce documents in Atlanta.

## 3. Jurisdiction To Enforce the Subpoenas

This Court has jurisdiction to enforce these subpoenas for the arbitration proceeding.

First, these are federal court subpoenas as well as NASD subpoenas, both of which this

Court can enforce under the Georgia Arbitration Code and the Federal Arbitration Act.

Second, while our primary reliance is on enforcing subpoenas under the NASD

Arbitration Code and the Georgia Arbitration Code, there is federal court jurisdiction to

enforce the subpoenas under the Federal Arbitration Act.   That requires that motions to

compel or enforce be by "the United States district court for the district in which such

arbitrators, or a majority of them, are sitting" (9 U.S.C. § 7), which is the Northern

District of Georgia. (Ex.12.)[4] *E.g., In re Arbitration Between Security Life Ins. Co.,* 228

F.3d at 870-71, 872; *Amgen Inc. v. Kidney Center,* 879 F.Supp. at 880, 881.

---

[4] While not needed, there is complete diversity between the parties.   The Stacy
Foundation is a Florida nonprofit corporation and a Florida citizen. (SOC ¶1.)   Merrill
Lynch is a Delaware corporation and a New York citizen. (SOC ¶2.)   TH Lee is a
Delaware limited partnership and a New York citizen. (Ex.15, 18.)   ML-Lee is a Delaware
trust and a New Jersey citizen. (SOC ¶18.)   Click Tactics is a Delaware corporation and a
Georgia citizen. (Ex.16, 17.)   The matter in controversy exceeds $75,000, exclusive of
interest and costs. (SOC ¶84.)

## ARGUMENT

## A. THE NASD ARBITRATION PANEL PROPERLY ISSUED THE SUBPOENAS, AND THEY ARE ENFORCEABLE, UNDER NASD, GEORGIA, AND FEDERAL AUTHORITY

This Court has authority to enforce, and the NASD Panel had authority to issue,

subpoenas to third parties to produce documents in advance of the NASD hearing, under

each of the three authorities cited in each subpoena (Ex.1-6):

> This Subpoena is issued pursuant to the provisions of [1] Rule 10322(a) of the Code of Arbitration Procedure (the "Code") of NASD Dispute Resolution, NASD subpoena rules (www.nasd.com "Arbitration & Mediation" "Subpoenas and Orders to Produce or Appear"), Florida law (F.S.A. § 682.08, Fla. R. Civ. P. 1.351(a)), [2] Georgia law (O.C.G.A. §§ 9-9-9(a), 9-11-26(b)(1), O.C.G.A. § 9-11-34(c)), and [3] the Federal Arbitration Act (9 U.S.C.A. § 7; *Meadows Indemnity Co. v. Nutmeg Insurance Co.*, 157 F.R.D. 42, 44 (M.D. Tenn. 1994); *Stanton v. Paine Webber Jackson & Curtis, Inc.*, 685 F. Supp. 1241, 1242-43 (S.D.Fla. 1988)).

### 1. NASD Arbitration Code

The NASD Arbitration Code provides broad power for subpoenas: "The arbitrators

and any counsel of record to the proceeding shall have the power of the subpoena

process as provided by law." Rule 10322(a). That language does not limit subpoenas to

parties, or to hearings only. The NASD Discovery Guide (NASD Notice 99-90) says in

n.9: "non-parties may be required to produce documents pursuant to a subpoena or an

arbitration panel order to direct the production of documents." It expressly includes

third parties, and expressly includes production of documents without testimony.

The subpoena process "provided by law" includes the Georgia Arbitration Code and

the Federal Arbitration Act.

## 2. Georgia Arbitration Code Authority (or Alternatively Florida Arbitration Code)

Georgia is the forum state where the Arbitrators sit (Ex.12), and where the chair of

the panel, who signed the subpoenas, lives. (*See* Ex.1, 4.)

The Georgia Arbitration Code (O.C.G.A § 9-9-1) provides for arbitrator subpoenas

for documents as well as witnesses, and for enforcement by courts:

> (a) The arbitrators may issue subpoenas for the attendance of witnesses *and* for
> the production of books, records, documents, and other evidence.   These
> subpoenas shall be served and, *upon application to the court by a party or the
> arbitrators, enforced* in the same manner provide by law for service and
> enforcement of subpoenas in a civil action.
> (b) *Notices to produce* books, writings, and other documents or tangible things . .
> . may be used in the arbitration *according to procedures established by the
> arbitrators.*

The Georgia and Florida Arbitration Codes (*see* Fla.Stat.Ann. § 682.01, Florida

Arbitration Code) are essentially identical in regard to subpoenas of documents,[5] and

lead to the same result.[6]

---------------------------

[5] F.S.A. § 682.08, Fla. R. Civ. P. 1.351(a).

[6] Alternatively, Florida law is very similar, and also leads to enforcement of the
subpoenas.   (The Stacy Foundation is a Florida corporation with its only office in
Florida, and all relevant events occurred in Florida, so the nonfederal causes of action
are Florida causes of action (Florida securities, fraud, and fiduciary duty claims, other
than federal securities claims).)   Under the Florida Arbitration Code, "arbitrators...in
the course of her or his jurisdiction, may issue subpoenas for the attendance of

The Georgia Arbitration Code provision is supported by the Georgia Civil Practice

Act provision. The Civil Practice Act similarly allows for requests for production of

documents to be served on nonparties: a request for documents served by a party "shall

be applicable with respect to discovery against persons, firms or corporations who are

not parties . . . ." O.C.G.A. § 9-11-34(c). That is not limited to production of documents

at hearings or trials. And the Civil Practice Act similarly allows for subpoenas for

documents to be served on third parties. O.C.G.A. § 9-11-45. Georgia has a long-arm

statute for service.

Georgia courts enforce such subpoenas broadly, and do not limit them to witnesses

appearing at hearings. "As with discovery requested from parties, the only requirements

placed by the Georgia legislature on discovery requested from nonparties is that the

documents must be relevant and nonprivileged." *Sechler Family Partnership v. Prime*

*Group, Inc.*, 255 Ga.App. 854, 857, 567 S.E.2d 24 (Ga.App. 2002).

---

witnesses and for the production of books, records, documents, and other evidence. . . .
Subpoenas so issued shall be served, and . . . enforced in the manner provided by law
for the service and enforcement of subpoenas in a civil action." F.S.A. § 682.08. Thus,
subpoenas are for "witnesses" "and" for "documents—not just for witnesses to bring
documents. Rule 1.351(a) of the Florida Rules of Civil Procedure similarly states:

A party may seek inspection and copying of any documents or things within the
scope of rule 1.350(a) from a person who is not a party by issuance of a subpoena
. . . .

## 3. Federal Arbitration Act Authority

The Federal Arbitration Act, 9 U.S.C. § 7, similarly authorizes arbitrators to issue

subpoenas for documents:

> [Arbitrators] may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them *any book, record, document, or paper* which may be deemed material as evidence in this case. . . . Such summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court.

Most courts agree that "there is no territorial limitation on the panel's authority to order

the production of documents." *In re Arbitration Between Security Life Ins. Co.,* 228 F.3d

at 872. *E.g., Amgen Inc. v. Kidney Center,* 879 F.Supp. at 881; *Meadows Indemnity Co.*

*v. Nutmeg Insurance Co.,* 157 F.R.D. at 44 (in Tenn.). Because this provision was

enacted in 1925, it has generated disagreement among courts about whether it adapts to

the current practice of document production before trial, or is limited to bringing

documents to trial.

We do not primarily rely on the Federal Arbitration Act to authorize the subpoenas,

or to enforce them, because of that split in the cases. We instead rely primarily on the

---

Fla. R. Civ. P. Rule 1.351(a). Florida law does not limit that to subpoenas for trial or hearing, as a U.S. District Court has expressly held. *Stanton v. Paine Webber Jackson & Curtis, Inc.,* 685 F. Supp. 1241, 1242-43 (S.D.Fla. 1988).

NASD Arbitration Code[7] and on the Georgia Arbitration Code (or Florida's). However, we believe that the FAA also authorizes the subpoenas and their enforcement.

The federal court split is over whether the above quoted language only allows a subpoena for documents in conjunction with an appearance of a witness at hearing or trial (the Third Circuit and a S.D.N.Y. decision), or also allows a subpoena for documents independent of a witness' appearance (the Eighth Circuit, the Sixth Circuit, at least one court in the Eleventh Circuit, and other S.D.N.Y. decisions). Numerous courts allow subpoenas for documents independent of a witness' appearance and before the hearing. *E.g., In re Arbitration Between Security Life Ins. Co.,* 228 F.3d 870-71 (8th Cir. 2000); *American Federation of Television & Radio Artists v. WJBK-TV,* 164 F.3d 1004, 1009 (6th Cir. 1999)[8]; *Amgen, Inc. v. Kidney Center,* 879 F.Supp. 878, 880 (N.D.Ill. 1995); *Meadows Indemnity Co. v. Nutmeg Insurance Co.,* 157 F.R.D. 42, 44-45 (M.D. Tenn. 1994); *Stanton v. Paine Webber Jackson & Curtis, Inc.,* 685 F. Supp. 1241, 1242-43 (S.D.Fla. 1988). *Accord, In re Arbitration Between Douglas Brazell v. American Color Graphics, Inc.,* 2000 WL 364997, at *3 (S.D.N.Y. 2000); *In re Application of Technostroyexport,* 853 F.Supp. 695, 697 (S.D.N.Y. 1994).

---

[7] NASD Rule 10322(a) authorizes use of "the subpoena process as provided by law."
[8] While the decision was under the LMRA, the court based its reasoning on the parallel provisions of the FAA, which "implicitly include[s] the authority to compel the production of documents for inspection by a party prior to the hearing." *Id.* at 1009.

The *Stanton* decision, within this Circuit, enforced arbitration subpoenas for

documents independent of any hearing or trial:

> under the [Federal] Arbitration Act, the arbitrators may order and conduct such
> discovery as they find necessary. . . . Plaintiff's contention that § 7 of the
> [Federal] Arbitration Act only permits the arbitrators to compel witnesses at the
> hearing, and prohibits pre-hearing appearances, is unfounded.

The Eighth Circuit, like the other decisions cited above, similarly stated:

> We thus hold that implicit in the arbitration panel's power to subpoena relevant
> documents for production at a hearing is the power to order the production of
> relevant documents for review by a party prior to the hearing.

*In re Arbitration Between Security Life Ins. Co.,* 228 F.3d at 870-71. The Sixth Circuit

reached the same conclusion. *American Federation of Television & Radio Artists v.*

*WJBK-TV,* 164 F.3d at 1009.

## 4.  Federal Court Authority To Enforce Arbitrators' Subpoenas

Under the Federal Arbitration Act, the U.S. District Court, where the arbitrators sit,

expressly has the authority to compel or enforce arbitrators' subpoenas:

> if any person or persons so summoned to testify to testify shall refuse or neglect to
> obey said summons, upon petition *the United States district court for the district*
> *in which such arbitrators, or a majority of them, are sitting* may compel the
> attendance of such person or persons before said arbitrator or arbitrators . . . .

9 U.S.C. § 7.

This U.S. District Court authority is independent of the Federal Rules of Civil

Procedure. The motion to enforce is filed in the district where the arbitrators sit, instead

of in the district where the documents were subpoenaed. Thus, in a Minnesota arbitration, the District of Minnesota entered the order enforcing the subpoena, even though the subpoena was issued from and served in the Central District of California. *In re Arbitration Between Security Life Ins. Co.*, 228 F.3d at 870-71. Similarly, in an Illinois arbitration, the Northern District of Illinois entered the order enforcing the subpoena, though the subpoena was issued from and served in the Eastern District of Pennsylvania. *Amgen Inc. v. Kidney Center*, 879 F.Supp. at 880, 881, 883.

Under the Georgia Arbitration Code, courts similarly may enforce arbitrators' subpoenas:

(a)    The arbitrators may issue subpoenas for the attendance of witnesses and for the production of books, records, documents, and other evidence.    These subpoenas shall be served and, *upon application to the court* by a party or the arbitrators, *enforced* in the same manner provided by law for the service and enforcement of subpoenas in a civil action.

O.C.G.A. § 9-9-9(a).

Thus, we do not rely on the Federal Rules of Civil Procedure, because their provision for federal court lawsuit subpoenas differs from the Federal Arbitration Act provision for arbitration subpoenas. Rule 45(a)(2) provides that the subpoena "shall issue from the court for the district in which the production or inspection is to be made" (which was the case here), and Rule 45(c)(2) then provides that enforcement is by "the court by which the subpoena was issued." By contrast, the FAA provides that enforcement is by "the

PLAINTIFFS' MOTION TO ENFORCE SUBPOENAS      13

United States district court for the district in which such arbitrators, or a majority of them, are sitting." 9 U.S.C. § 7.  The Eighth Circuit discussed this difference, and rejected the argument that the territorial limits for subpoenas under Rule 45 apply under the FAA. *In re Arbitration Between Security Life Ins. Co.*, 228 F.3d at 871-72.

## B. THE NASD ARBITRATION PANEL PROPERLY RULED ON AND OVERRULED OBJECTIONS, AND FEDERAL COURTS DEFER TO SUCH ARBITRATION DETERMINATIONS

### 1. The Arbitration Panel Had Authority To Rule on Objections to the Subpoenas

The Panel has authority to rule on objections to its subpoenas.  The U.S. Supreme Court (in a labor arbitration case) said that, once a matter is submitted to arbitration, "'procedural questions' which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 558 (1964).  "Procedural questions" include objections to subpoenas.

Thus, the U.S. Court of Appeals for the Sixth Circuit held that arbitrators and not courts should rule on objections to arbitrators' subpoenas (in that case an objection to relevance and to the appropriateness of a subpoena to a third party), and other courts have agreed[9]:

_____

[9] *Amgen Inc. v. Kidney Center*, 879 F.Supp. 878, 880 (N.D. Ill. 1995) (arbitrator, Judge McGarr, ruled on objections); *In re Application of Technostroyexport*, 853 F.Supp. 695, 698 (S.D.N.Y. 1994) ("a court can enforce a discovery ruling of an arbitrator," and "questions about the obtaining of evidence in arbitration proceedings are to be

the relevance of the information and the appropriateness of the subpoena should be determined in the first instance by the arbitrator. In *Wilkes-Barre*, . . . the district court declined to do so as well stating that '[i]t is not the function of this court to determine what an arbitrator would or should find relevant in resolving a dispute." *Wilkes-Barre*, 559 F.Supp. at 882. *See also Meadows*, 157 F.R.D. at 44 (district court noted that the arbitration panel had determined the documents were relevant to the proceedings and refused to 'second guess' that conclusion). . . .

*American Federation of Television & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1010

(6th Cir. 1999). Similarly, the Eighth Circuit, rejecting the argument that the federal

courts must determine the materiality of the information subpoenaed, "decline[d] to

saddle the courts of this circuit with such a burden," and left that determination to the

arbitrators, under "the well-recognized federal policy favoring arbitration." *In re Arbitration Between Security Life Ins. Co.*, 228 F.3d at 871.[10] The U.S. District Court in

---

determined by the arbitrators"); *In re Arbitration Between Douglas Brazell v. American Color Graphics, Inc.*, 2000 WL 364997, at *3 (S.D.N.Y. 2000) ("As in *Meadows*, the Court finds that given its limited contact with the issues involved in the proceeding, the Court should not disturb the arbitrator's determination that the documents were relevant."); *Meadows Indemnity Co. v. Nutmeg Ins. Co.*, 157 F.R.D.42, 45 (M.D. Tenn. 1994) ("As I find the arbitration panel acted within its authority, I see no reason to grant the protective order sought by Willis Corroon and further delay the arbitration proceedings. The arbitration panel's subpoena is valid under the Federal Arbitration Act.").

[10] *In re Arbitration Between Security Life Ins. Co.*, 228 F.3d 865, 871 (8th Cir. 2000) ("Transamerica further contends that § 7 required the district court to make an independent assessment of the materiality of the information sought by Security before acting to compel compliance with the panel's subpoena. . . . Transamerica's attempt to transform this language into a requirement that the district court second-guess the panel's judgment is thus misleading at best. . . . We therefore decline to saddle the courts of this circuit with such a burden.")

Florida responded to objections to discovery permitted by a securities arbitration panel,

by refusing to hear the objection, and leaving the matter to the arbitrators. *Stanton v.*

*Paine Webber*, 685 F.Supp. 1241, 1242 (S.D.Fla. 1988).

## 2. The Arbitration Panel Correctly Rejected the Argument that Arbitration Subpoenas May Not Be Enforced Before a Hearing or Trial, but Only To Require a Witness To Bring Documents to a Hearing or Trial

The Panel considered and rejected this argument. (Ex. 10.)

The NASD Arbitration Code clearly does not limit subpoenas of third parties to

bringing documents to hearings. Rule 10322(a) broadly states, "The arbitrators and any

counsel of record to the proceeding shall have the power of the subpoena process as

provided by law." *The Arbitrator's Manual* is similarly not limited.[11]

The Georgia Arbitration Code, by authorizing subpoenas for "witnesses" "and" for

"documents—not just for witnesses to bring documents, similarly does not limit

subpoenas to bringing documents to hearings. O.C.G.A § 9-9-9(a).

---

[11] Securities Industry Conference on Arbitration, *The Arbitrator's Manual* 13 (Aug. 2004):
> An arbitrator appointed to preside at a prehearing conference is authorized by the Uniform Code to act at that time on behalf of the entire panel in issuing subpoenas, directing appearances, ordering the production of documents and information, setting deadlines, and issuing any other order that may serve to expedite the process and permit any party to develop its case fully. . . .

The NASD subpoena rules (Ex. 11) similarly provide that Arbitrators may issue subpoenas for third party documents, without any limitation to bringing them to hearings.

Because our primary reliance is on the NASD Arbitration Code and Georgia Arbitration Code, it would not be fatal if the FAA were interpreted more narrowly.

However, the FAA, as interpreted by the Eighth Circuit and Sixth Circuit, at least one District Court in this Circuit, and other courts, also allows subpoenas for documents unrelated to hearings or trials. *E.g., In re Arbitration Between Security Life Ins. Co.,* 228 F.3d at 870-71; *American Federation of Television & Radio Artists v. WJBK-TV,* 164 F.3d at 1009; *Stanton v. Paine Webber Jackson & Curtis, Inc.,* 685 F. Supp. at 1242-43 (S.D.Fla. 1988); *Amgen Inc. v. Kidney Center,* 879 F.Supp. at 880; *Meadows Indemnity Co. v. Nutmeg Insurance Co.,* 157 F.R.D. at 44, 45. *Stanton* similarly held "unfounded" the "contention that § 7 of the [Federal] Arbitration Act only permits the arbitrators to compel witnesses at the hearing, and prohibits pre-hearing appearances." 685 F.Supp. at 1243. *Amgen* agreed that, for "any person (not just parties),"

> courts have held . . . that implicit in the power to compel testimony and documents for purpose of a hearing is the lesser power to compel such testimony and *documents for purposes prior to hearing.*

879 F.Supp. at 880. *Accord, Meadows Indemnity Co. v. Nutmeg Insurance Co.,* 157 F.R.D. at 45. Thus, "the arbitrator's subpoena is both valid and enforceable." 879 F.Supp. at 883.

## 3. The Proposed Confidentiality Agreement Adequately Protects the Subpoenaed Documents

We proposed, and still propose, the Confidentiality Agreement to the objecting parties (Ex.7) to eliminate concerns about confidentiality of information produced.

## 4. The Arbitration Panel Correctly Found that the "General Objections" Were Not Meritorious

The Panel recently rejected (Ex. 10) the "General Objections," which were 20 boilerplate objections of every imaginable sort. Yet TH Lee and Click Tactics essentially repeated the same objections to the new subpoenas. (Ex.13-14.) Those "General Objections" included the following, and others:

That "an NASD arbitrator does not have the authority to order discovery from non-parties to the arbitration proceeding for the above-referenced action." However, the Eighth Circuit, and other courts cited, rejected the argument that a third party could "refuse[] to respond to the subpoena" from the arbitrators because "it was not a party to the arbitration." *In re Arbitration Between Security Life Ins. Co.,* 228 F.3d at 868.

That "an NASD arbitrator does not have the authority to subpoena pre-hearing discovery from non-members and non-parties." (This is discussed above. The objection obviously would prevent obtaining documents from out-of-state witnesses, since there is no authority to subpoena such a witness to come to the hearing in Atlanta, and so it would frustrate arbitration and implementation of the FAA.)

That the subpoenas "require a third party to undertake extensive efforts to search for responsive documents." (TH Lee invested an average of $40 million in each of 27 Portfolio Companies, and reported a "Current Value" chart to investors each quarter (Ex. 9), and so doubtless has a file of valuations for each company.)

That "there is no pending federal action, with respect to the above-referenced arbitration, in any federal court." (There is now.)

That "they exceed the permissible scope of discovery permitted by the Federal Rules of Civil Procedure and/or the Local Rules." (Rule 45 is inapplicable, as discussed above.)

That "the categories of documents requested therein are vague, indefinite, uncertain, ambiguous and/or contain undefined terms and cannot be reasonably answered."

That "service was not proper." (The subpoenas were personally served on registered agents.)

Again, the Panel already rejected these "General Objections." (Ex. 10.) This Court should simply adopt the Panel's order, or reject the objections with the proposed order.

## 5. The Arbitration Panel Also Correctly Found that the "Specific Objections" Were Not Meritorious

The subpoena to TH Lee asked for 4 categories of documents, and the subpoena to Click Tactics asked for 3. (Ex. 1, 4).

Three identical "Specific Objections" are given to each of these 3-4 categories of subpoenaed documents. Like the "General Objections," these are identical to the "Specific Objections" made earlier, and that the Panel rejected. (Ex. 10.)

First, the subpoenas were objected to as "overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence." However, TH Lee reported to its investors the "Current Value" of its investments or "portfolio companies" (Ex.9) and induced the Stacy Foundation and other investors to invest nearly 3 times their original investment of $1.1 billion. We seek the basis of that "Current Value."

TH Lee and Click Tactics cannot deny that the Amended Statement of Claim (¶¶17(c), 18(b)-(d)) alleges that ML-Lee and TH Lee (in which it invested) regularly reported a "Current Value" of each portfolio company, and alleges that was false.[12]

---

[12] For example, Original and Amended Statement of Claim ¶ 18(c) said:

> Merrill Lynch Investments and the Fund have written off 10 as valueless, and have written off 1 of 12 subsequent holdings as valueless. They list the value of the remaining holdings at $440.5/$479.7 million of their cost, or 91.8%. This is a misrepresentation of the true value, or alternatively an omission to state the true value, on information and belief. It is not reasonable or plausible that 11 of 37 holdings lost all their original value and have 0 value, while 26 of 37 holdings have held 91.8% of their original value, even though nearly all holdings were and are internet companies. However, information like this makes it impossible to make a reasonable determination whether to continue to invest, in order not to suffer forfeiture of all amounts already invested . . . .

Second, the subpoenas were objected to as "seek[ing] trade secret and highly confidential business information" which would be "competitively injurious." The offered Confidentiality Agreement (Ex.7) eliminates that concern. However, TH Lee did not treat the information as confidential, because it and ML-Lee mailed "Current Values" quarterly to $1.1 billion of investors. (Ex.9.) For example, they listed the "Current Value" of the $7 million investment in Click Tactics as $7 million (Ex.9, pp.6, 13, 14, 21, 25), and then listed the "Current Value" of the $15.7-$22.8 million investment as $51 million (*id.* p.22), and $69 million (*id.* pp.37, 44, 49, 53). TH Lee and ML-Lee sent to investors the information that Click Tactics would have revenue of $16 million in 2002 (*id.* pp.7, 14), $6.1 million in 2003 (*id.* p.37), and $13.8 or $8.9 million in 2004 (*id.* p.44, 49, 63); and had EBITDA of ($1.1) or ($2.1) million in 2003 (*id.* p.22), ($1.4) or ($4.5) million in 2004 (*id.* pp.37, 44, 49). Despite these downward trends of numbers, TH Lee and ML-Lee did not reduce the "Current Value" from the $7 or $15.7 million investment to a lower number until December 31, 2004, when they reduced the now $22.9 million investment to a value of $13.1 million (*id.* p.56), but even then raised the "Post Money Valuation" to $89 million (*id.* p.57), while reporting that 2004 revenue was even lower than stated earlier at $8.7 million, while EBITDA was only ($3.8) million (*id.* p.57). Reporting thereafter remained similar. For the rest of the 27 companies, similar "Current

Bird, Loechl, Brittain & McCants, LLC

By: _____
Wendell R. Bird, P.C.
Georgia Bar No.: 057875
Email: wbird@birdlawfirm.com

By: _____
Christopher M. Huffines
Georgia Bar No.: 375205
Email: chuffines@birdlawfirm.com

1150 Monarch Plaza
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326
Telephone: (404) 264-9400
Facsimile: (404) 365-9731

# EXHIBITS

### A. The Subpoenas to TH Lee Putnam and TH Lee Co.
EXHIBIT 1   NASD SUBPOENA 1*
EXHIBIT 2   D.DEL. SUBPOENA 1*
EXHIBIT 3   S.D.N.Y. SUBPOENA 1*

### B. The Subpoenas to Click Tactics, Inc.
EXHIBIT 4   NASD SUBPOENA 2*
EXHIBIT 5   D.DEL. SUBPOENA 2*
EXHIBIT 6   N.D.GA. SUBPOENA 2*          *With return of personal service
EXHIBIT 7   OFFERED CONFIDENTIALITY AGREEMENT

### C. The Statement of Claim and the "Current Valuation" Misrepresentations
EXHIBIT 8   AMENDED STATEMENT OF CLAIM (JAN. 6, 2005)
EXHIBIT 9   TH LEE AND ML-LEE "CURRENT VALUATIONS"

### D. The Orders Rejecting Objections
EXHIBIT 10  NASD ORDER REJECTING OBJECTIONS (FEB. 6, 2006)
EXHIBIT 11  NASD RULES AUTHORIZING SUBPOENAS FOR DOCUMENTS
EXHIBIT 12  NASD LETTER SHOWING ARBITRATION FORUM IS N.D.GA.
EXHIBIT 13  FURTHER OBJECTIONS BY TH LEE (MAR. 9, 2006)
EXHIBIT 14  FURTHER OBJECTIONS BY CLICK TACTICS (MAR. 9, 2006)

### E. Georgia Contacts of Subpoena Recipients
EXHIBIT 15  TH LEE PUTNAM VENTURES, L.P. AND THOMAS H. LEE CO. CONTACTS IN N.D. GA.
EXHIBIT 16  CLICK TACTICS, INC. PRINCIPAL PLACE OF BUSINESS IN DULUTH, GA.
EXHIBIT 17  TH LEE REPORTS ON CLICK TACTICS LOCATION IN GA. AND ON INITIAL $7 MILLION INVESTMENT AND FURTHER AMOUNTS
EXHIBIT 18  ENTITY STRUCTURE OF TH LEE PUTNAM VENTURES, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion, memorandum,

exhibits, and proposed order was sent, by agreement of the parties, by Federal Express

prepaid to:

> WEIL, GOTSHAL & MANGES LLP
> James L. Messenger
> 100 Federal Street
> Boston, Massachusetts 02110
> (617) 772-8300
> > Attorney for Third Parties
> > TH Lee Putnam Ventures L.P. and Click Tactics, Inc.

> Bonnie R. Simon
> Senior Arbitration Administrator
> NASD Dispute Resolution
> Boca Center
> 5200 Town Center Circle, Tower 1, Suite 400
> Boca Raton, FL 33486-1012

And by agreement of the parties, by facsimile and Federal Express, in lieu of mail, to:

> Christopher P. Hall
> Joaquin Ezcurra
> Adrienne M. Ward
> MORGAN, LEWIS & BOCKIUS LLP
> 101 Park Avenue
> New York, New York 10178
> Telephone: (212) 309-6000
> Facsimile: (212) 309-6273

> Attorney for Respondent Merrill Lynch Pierce Fenner & Smith Inc.

This March 15th, 2006.

> Bird & Loechl, LLC
>
> By: _____

## CERTIFICATE OF COMPLIANCE
## (PURSUANT TO L.R. 7.1D)

I certify that this brief has been prepared with one of the font and point selections approved by the Court in L.R. 5.1C (Times Roman 14 point) or, if typewritten, that the brief does not contain more than 10 characters per inch of type.

This March 15th, 2006.

Bird & Loechl, LLC

By: _____

FEB06D0C/STACYSUBPOENASMOTION